IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAI`I

_____
                                )
STEVEN W. CROWE,                )
                                )
                Plaintiff,      )
                                )
        v.                      ) Civ. No. 18-00288 ACK-RT
                                )
JOHN E. WHITLEY, Acting Secretary )
of the Army, Department of      )
the Army,                       )
                                )
                Defendant.      )
_____ )

ORDER GRANTING THE ARMY'S MOTION TO DISMISS (ECF. NO. 55) AND
AFFIRMING THE AGENCY'S DECISION UPHELD BY THE MERIT SYSTEMS
PROTECTION BOARD

Plaintiff Steven Crowe is a former police officer who worked at Tripler Army Medical Center at Fort Shafter, Hawaii. He was removed from federal employment in 2017 after documented misconduct issues. In this lawsuit, Plaintiff seeks review of the MSPB decision affirming his removal and brings claims against Acting Secretary John E. Whitley in his official capacity as the Acting Secretary of the Army (the "Army" or the "Agency") for discrimination based on Plaintiff's race, sex, and sexual orientation.

Two matters are before the Court:  (1) the Army's Motion to Dismiss or in the Alternative for Summary Judgment (the "Motion"), ECF No. 55, on the discrimination claims, and (2) Plaintiff's petition for review of the Merit Systems

1

Protection Board's ("MSPB" or "Board") final order on the non-discrimination claims.  For the reasons discussed below, the Army's Motion is GRANTED and the Agency decision as upheld by the MSPB is AFFIRMED.

## BACKGROUND

This "mixed case" presents two sets of claims: appealable non-discrimination claims brought under Section 7703 of the Civil Service Reform Act of 1978 (the "CSRA"), U.S.C. § 1101, et seq., coupled with related discrimination and retaliation claims brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, et seq.

## I.   Factual Background

The following facts related to Plaintiff's removal and allegations of discrimination are principally drawn from the Complaint, ECF No. 1; evidentiary exhibits attached to the parties' briefs and concise statements of fact ("CSF"), ECF Nos. 55-56 & 85-86; and the administrative record ("AR"), including the decision of the administrative law judge ("ALJ"), ECF Nos. 31-32.

### a. Job Background

Until his removal in 2017, Plaintiff was employed as a GS-5 police officer in in the Office of the Provost Marshal at

Tripler.  Compl. ¶ 6; Army CSF, ECF No. 56, ¶ 1; Pl. CSF, ECF
No. 86, ¶ 1.  His first-level supervisor was Supervisory Police
Officer Michael Ballesteros, and his second-level supervisor was
Deputy Chief Provost Marshal ("DPM") James Ingebredtsen.  Compl.
¶ 17; Army CSF ¶ 2; Pl. CSF ¶ 2.

### b. February 2016 Incident with Officer Kevin Oda

About one year before Plaintiff was removed from his
position at Tripler, he complained internally about an
interaction he had with Officer Kevin Oda.  ECF No. 56-2 at
27:11-27:23; id. at ex. 2.  According to Plaintiff, on February
22, 2016, Officer Oda called Plaintiff a "fag" when introducing
him to a new officer.  Compl. ¶ 13; Army CSF ¶ 15; Pl. CSF ¶ 15;
ECF No. 56-2 at ex. 1.  Plaintiff reported the incident to his
chain of command the next day.  ECF No. 56-2 at ex. 1.  Less
than 30 minutes after Plaintiff reported the incident,
Plaintiff's supervisor Officer Ballesteros directed an
investigation and corrective action, and a memorandum of
counseling was issued on February 24.  ECF No. 56-2 at ex. 2;
see also Army CSF ¶ 16; Pl. CSF ¶ 16.  That same day, Officer
Oda sent Plaintiff an email apologizing, ECF No. 56-7 at ex. 2,
and Officer Ballesteros testified that he held a meeting with
Plaintiff and Officer Oda at which Plaintiff and Officer Oda
shook hands and Plaintiff stated that he did not want to pursue

the matter any further, ECF No. 56-2 at 31:8-32:1; id. at ex. 3.[1/]

### c. Investigation into Plaintiff's Misconduct

A few months later, Plaintiff's first-level supervisor Officer Ballesteros became aware of an email sent by Mr. James Sewell on April 9, 2016, in which Mr. Sewell claimed that Plaintiff had approached him in the Tripler Emergency Department ("ED") and confronted him about some sort of relationship conflict involving Plaintiff, Mr. Sewell, and Ms. Anela Garcia, a medical assistant in the Tripler ED.  ECF No. 56-3 at ex. 1; id. at 23:6-23:9; ECF No. 56-4 at 260:9-18; see also Army CSF ¶ 2; Pl. CSF ¶ 2.  In the email, Mr. Sewell accused Plaintiff of "spreading lies" and cultivating conflict amongst staff; for example, telling employees that Mr. Sewell and Ms. Garcia were in a relationship.  ECF No. 56-3 at ex. 1.  The email also suggested that Mr. Sewell felt "unsafe" because Plaintiff carries a gun while on duty.  Id.; see also ECF No. 56-5 at ex. 1.

The allegations in this email led to Plaintiff becoming the subject of an investigation.  ECF No. 56-4 at

---

[1/] At the hearing, Plaintiff's counsel denied that Plaintiff ever received any apology from Officer Oda and denied that any meeting was held where the two shook hands.  There is ample evidence in the record that says otherwise, including statements from Plaintiff himself.  ECF No. 56-2 at exs. 2-3; see also ECF No. 56-7 at ex. 2 (EEO complaint in which Plaintiff states, "I received an apology email from Officer Oda").

261:2-17.   After consulting with DPM Ingebredtsen and Provost
Marshal Kevin Guerrero, Officer Ballesteros assigned Officer Oda
to lead the investigation.  Id. at 261:18-262:9.  According to
Officer Ballesteros, Officer Oda was the first person he
encountered and was available to handle the investigation at
that time.  Id. at 262:4-21.

The investigation revealed additional interpersonal
conflict between Plaintiff, Ms. Garcia, and Mr. Sewell.  See ECF
No. 56-5.  Specifically, Ms. Garcia testified under oath that
she and Plaintiff had engaged in sexual relations at Tripler in
a police training room while Plaintiff was on duty and in
uniform, around three to four times per week for about six
months.  ECF No. 56-5 at ex. 6.  In her testimony, Ms. Garcia
also testified as to the details of the training room.  Id.  Ms.
Garcia then recanted her testimony, ECF No. 56-2 at ex. 9,[2/] but
later reversed course again, saying she had recanted under
pressure from one of Plaintiff's coworkers, Officer Justin
Brower, ECF No. 56-6 at 147:1-14, 147:25-148:8.

For his part, Plaintiff has denied ever having sexual
relations in the police training room while on duty.  He admits
to having had a sexual relationship with Ms. Garcia but insists

---

[2/]  Garcia stated, "I recant.  I felt pressure and going through
stressors in my life obligated to make false statements."  ECF No. 56-2 at
ex. 9.

her story about inappropriate behavior while on the job is
entirely fabricated.

Other alleged misconduct was revealed through Officer
Oda's investigation as well.  Witnesses testified that they had
observed Plaintiff chatting with Department of Veterans Affairs
("VA") personnel in the VA's ambulatory care clinic ("ACC") for
hours at a time, that Plaintiff had shown coworkers photos of
women he was having sex with, and that Plaintiff and Ms. Garcia
were having sexual relations on the tenth floor at Tripler.  ECF
No. 56-5 at ex. 5.  Other witnesses corroborated the testimony
that Plaintiff would stay at the ACC talking with VA employees
for hours at a time, and testified that Plaintiff was gossiping
about his and his coworkers' purported sexual relationships.
Id. at ex. 4.

On May 12, 2016, Plaintiff's supervisor Officer
Ballesteros removed Plaintiff's police powers and placed him on
temporary detail for 30 days pending an investigation
surrounding the alleged misconduct.  Army CSF ¶ 7; Pl. CSF ¶ 7.
The administrative detail was then extended indefinitely while
the investigation was ongoing.  ECF No. 56-2 at ex. 15.  While
Officer Oda began the investigation, it was largely directed by
Officer Ballesteros, and DPM Ingebredtsen conducted an
independent review of the investigation and its findings.  ECF
No. 56-4 at 311:11-313:17; ECF No. 56-5 at 57:9-19.

### d. Plaintiff's Removal

On November 4, 2016, six months after being placed on temporary detail, Officer Ballesteros issued a Notice of Proposed Removal ("NOPR") based on one charge and five specifications.  AR 740-43; ECF No. 56-2 at ex. 10; ECF No. 86-7.  DPM Ingebredtsen (the deciding official) ultimately issued a Notice Decision on a Proposed Removal on February 14, 2017, which terminated Plaintiff's employment effective March 4.  AR 744-48; ECF No. 56-9.

## II.  Procedural History

### a. EEO Complaint

On August 15, 2016, after the investigation had begun but before the NOPR was issued, Plaintiff filed a formal equal employment opportunity ("EEO") complaint alleging a hostile work environment stemming from discrimination based on his race and sexual orientation.  ECF No. 56-7 at ex. 2.  Plaintiff cited the interaction with Officer Oda, and alleged that "since that day" Plaintiff had been discriminated against and punished without cause.  See id.  The complaint alleged that Officer Oda was assigned to conduct the investigation into Plaintiff's misconduct despite the previous informal complaint Plaintiff had made about him.  See id.  The EEO complaint asserted discrimination based on Plaintiff's "perceived" sexual orientation, but it stated, "I'm not gay" and pointed instead to

7

Plaintiff's Facebook page, which Plaintiff indicated showed that many of his family members were openly gay.  Id.

On November 5, 2016, the day after the NOPR was issued, Plaintiff amended his EEO complaint to assert that the previously-alleged discrimination had culminated in a shoddy investigation against Plaintiff and ultimately in his proposed removal.  ECF No. 56-7 at ex. 4.  Then, after the Notice of Removal was issued, Plaintiff again amended his EEO complaint to include the Army's removal action.  AR 614-17, 622-704.

**b. MSPB Appeal**

On March 29, 2017, Plaintiff filed a mixed-case appeal with the MSPB challenging his removal and alleging unlawful discrimination and "disparate" treatment based on his sexual orientation.  AR 6-13; ECF No. 56-7 at ex. 5; see also Army CSF ¶ 22; Pl. CSF ¶ 22.  Two months later, the ALJ for the MSPB dismissed Plaintiff's appeal without prejudice.  AR 713-23.  She found that Plaintiff's amendments to his EEO complaint showed that he had elected to pursue his removal claims as a mixed-case EEO complaint, meaning the appeal to the MSPB was premature. See AR 713-23; see also AR 598-600, 608-17.

After there was no timely decision on his EEO complaint, Plaintiff ultimately refiled his appeal before the MSPB on December 6, 2017.  AR 731-50.  The only discrimination-

8

related defense he raised before the MSPB was discrimination
based on sexual orientation.  AR 770.

In a written decision issued on May 24, 2018, the ALJ
upheld Plaintiff's removal, finding that the Army (1) proved
four of the five specifications to the charge of conduct
unbecoming of a police officer and (2) properly imposed a
penalty within the tolerable limits of reasonableness.  AR 1653-
1690 & ECF No. 56-7 at ex. 9 (the "ALJ Decision").  The ALJ also
determined that the Army did not discriminate against Plaintiff
based on his sexual orientation.  ALJ Decision at 20-25.  The
ALJ's Decision in the MSPB appeal became final on June 28, 2018.
Id. at 31.

### c. Civil Lawsuit

Plaintiff filed this lawsuit on July 27, 2018.  See
Compl.  On December 27, 2019, the Army moved to dismiss or in
the alternative for summary judgment on the Title VII
discrimination claims, ECF No. 55, and filed its associated CSF,
ECF No. 56.  Because one of Plaintiff's claims rested on
allegations of discrimination based on sexual orientation under
Title VII, the Court stayed the proceedings pending the Supreme
Court decision addressing the scope of Title VII with respect to
discrimination based on sexual orientation.  ECF No. 64.
Following the Supreme Court's June 15, 2020 decision holding
that Title VII covers discrimination based on sexual orientation

(known under the consolidated case name, <u>Bostock v. Clayton Cty., Georgia</u>, 140 S. Ct. 1731, 207 L. Ed. 2d 218 (2020)), the Army withdrew its argument on that claim.  ECF No. 67 at 2; <u>see also</u> ECF No. 68.  The Court then lifted the stay and directed a briefing schedule, which was delayed a few times because of COVID-19-related challenges.  ECF Nos. 68, 75, & 83.

A telephonic hearing was ultimately held on February 11, 2021.  Plaintiff filed his Opposition to the Motion and CSF in opposition on January 21, ECF Nos. 85 & 86,[3/] and the Army filed its Reply on January 27, ECF No. 88.  As to the MSPB appeal, Plaintiff filed his Opening Brief on September 8, 2020, ECF No. 76; the Army filed its Answering Brief on November 12, 2020, ECF No. 80; and Plaintiff filed his Reply on January 28, 2021, ECF No. 89.[4/]

## **STANDARDS**

This is a mixed case involving claims by a federal employee that he has been affected by (1) an adverse employment action and (2) related discrimination. Federal courts apply different standards of review to each of these sets of claims.

Under the CSRA, a federal employee has a right to

---

[3/]  On the day of the hearing, Plaintiff filed an "errata" to exhibit A of his CSF.  ECF No. 91.

[4/]  The parties stipulated to—and the Court allowed—an enlargement of length of the briefs addressing the MSPB appeal.  <u>See</u> ECF No. 81.

appeal certain adverse employment actions by the agency—
including removal—to the MSPB. See Kloeckner v. Solis, 568 U.S.
41, 43-44, 133 S. Ct. 596, 184 L. Ed. 2d 433 (2012) (citing 5
U.S.C. §§ 7512, 7701). The MSPB is "an independent adjudicator
of federal employment disputes." Id. at 44, 133 S. Ct. 596, 184
L. Ed. 2d 433. An employee's appeal "may merely allege that the
agency had insufficient cause for taking the action under the
CSRA; but the appeal may also or instead charge the agency with
discrimination prohibited by another federal statute," such as
Title VII. Id. (citing 5 U.S.C. § 7702(a)(1), which lists
federal antidiscrimination statutes). "When an employee
complains of a personnel action serious enough to appeal to the
MSPB and alleges that the action was based on discrimination,"
he has brought a so-called "mixed case." Id. (citing 29 C.F.R.
§ 1614.302).

Petitions to review a final decision of the MSPB are
ordinarily filed in the United States Court of Appeals for the
Federal Circuit. 5 U.S.C. § 7703(b)(1)(A). When, however, a
federal employee "claims that an agency action appealable to the
MSPB violates an antidiscrimination statute listed in §
7702(a)(1)," the employee "should seek judicial review in
district court, not in the Federal Circuit." Kloeckner, 568
U.S. at 56, 133 S. Ct. 596, 184 L. Ed. 2d 433.

I.   **Statutory Discrimination Claims**

The standard of review for statutory discrimination claims is de novo.  See 5 U.S.C. § 7703(c); see also id. § 7703(b)(2) (cross-referencing § 7702).  Thus, the usual standards under the relevant Federal Rule of Civil Procedure ("Rule") apply:

   a. **Rule 12(b)(1): Motion to Dismiss for Lack of Subject Matter Jurisdiction**

A defendant may challenge a court's subject matter jurisdiction under Rule 12(b)(1).  "A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction."  See Thompson v. McCombe, 99 F.3d 352, 353 (9th Cir. 1996).

A challenge to a court's subject matter jurisdiction may be either "facial" or "factual."  Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004).  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  Id. (quoting Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004)).  The moving party may bring a factual challenge to the court's subject matter jurisdiction by submitting "affidavits or any

12

other evidence properly before the court." Colwell v. Dep't of Health & Human Servs., 558 F.3d 1112, 1121 (9th Cir. 2009) (quoting St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989)). The nonmoving party must then "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject-matter jurisdiction." Id. (quoting St. Clair, 880 F.2d at 201). In these circumstances, the court may look beyond the complaint without having to convert the motion into one for summary judgment. U.S. ex rel. Meyer v. Horizon Health Corp., 565 F.3d 1195, 1200 n.2 (9th Cir. 2009), overruled on other grounds by U.S. ex rel. Hartpence v. Kinetic Concepts, Inc., 792 F.3d 1121, 1128 n.6 (9th Cir. 2015). When deciding a factual challenge to the court's subject matter jurisdiction, the court "need not presume the truthfulness of the plaintiffs' allegations." Id. (quoting White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000)).

### b. Rule 56(a): Motion for Summary Judgment

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477

13

U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); see also Broussard v. Univ. of Cal., 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (citing Celotex, 477 U.S. at 323, 106 S. Ct. at 2553); see also Jespersen v. Harrah's Operating Co., 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586–87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (citation and internal quotation marks omitted and emphasis removed); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it

14

could affect the outcome of the suit under the governing law."
In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008) (citing
Anderson, 477 U.S. at 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202).
When considering the evidence on a motion for summary judgment,
the court must draw all reasonable inferences on behalf of the
nonmoving party.  Matsushita Elec. Indus. Co., 475 U.S. at 587,
106 S. Ct. 1348, 89 L. Ed. 2d 538; see also Posey v. Lake Pend
Oreille Sch. Dist. No. 84, 546 F.3d 1121, 1126 (9th Cir. 2008)
(stating that "the evidence of [the nonmovant] is to be
believed, and all justifiable inferences are to be drawn in his
favor" (internal citation and quotation omitted)).

## II.  Appeal of MSPB Decision

In contrast to the de novo review that applies to the
statutory discrimination claims, a court's review of an MSPB
decision regarding an adverse employment action is deferential:
The court must affirm the decision unless it is "arbitrary,
capricious, an abuse of discretion, not in accordance with law,
obtained without proper procedures, or unsupported by
substantial evidence."  Delgado v. Merit Sys. Prot. Bd., 880
F.3d 913, 916 (7th Cir. 2018) (citing 5 U.S.C. § 7703(c)).
"Substantial evidence is more than a mere scintilla . . . but
less than the weight of the evidence."  Jenkins v. Merit Sys.
Prot. Bd., 911 F.3d 1370, 1373 (Fed. Cir. 2019) (quoting Jones
v. Dep't of Health & Human Servs., 834 F.3d 1361, 1366 (Fed.

Cir. 2016)).  In addition, the MSPB's credibility determinations are "virtually unreviewable" on appeal.  Jones, 834 F.3d at 1368 (quoting Hambsch v. Dep't of Treasury, 796 F.2d 430, 436 (Fed. Cir. 1986)).  They are "nearly unreviewable, unless inherently improbable or discredited by undisputed fact."  Figueroa v. Nielsen, 423 F. Supp. 3d 21, 31 (S.D.N.Y. 2019) (citing White v. U.S. Postal Serv., 382 F. App'x 928, 933 (Fed. Cir. 2010)); see also Rogers v. Dep't of Def. Dependents Schs., Germany Region, 814 F.2d 1549, 1553-54 (Fed. Cir. 1987).

The petitioner "bears the burden of establishing error in the [MSPB's] decision."  Jones, 834 F.3d at 1366 (quoting Harris v. Dep't of Veterans Affairs, 142 F.3d 1463, 1467 (Fed. Cir. 1998)) (alteration in Jones).  And finally, "[t]he choice of penalty for employee misconduct is left to the agency's sound discretion," so the court "will not disturb the agency's choice unless the severity of its action appears totally unwarranted in light of the relevant actors."  DeWitt v. Dep't of the Navy, 747 F.2d 1442, 1444-45 (Fed. Cir. 1984) (citing Miguel v. Dep't of the Army, 727 F.2d 1081, 1083 (Fed. Cir. 1984); Brewer v. U.S. Postal Serv., 647 F.2d 1093, 1098 (Fed. Cl. 1981)).

## DISCUSSION

As discussed above, Plaintiff's discrimination claims under Title VII assert that the Army engaged in unlawful

16

employment discrimination; while his non-discrimination claims under the CSRA challenge the MSPB's final order affirming the Army's decision to terminate Plaintiff's employment.  While the facts and analysis of the claims may at times overlap, the Court addresses them separately.  The Court begins with its de novo review of the discrimination claims under Title VII and then moves on to its more deferential review of the MSPB's decision.

## I.   The Motion to Dismiss or in the Alternative for Summary Judgment

The Complaint asserts a discrimination claim under Title VII alleging that the Army discriminated against Plaintiff "by subjecting him to sexual harassment, a hostile work environment, and eventually terminating him from his position based on his sexual orientation, his sex (male), race (Caucasion), and based on reprisal for engaging in protected activities."  Compl. ¶ 39.  The Army argues that the Court should dismiss the retaliation and race and gender discrimination portions for lack of subject matter jurisdiction, and dismiss or grant it summary judgment on the sexual-orientation discrimination portion.  Mot. at 1-2.  The Court takes each of these arguments in turn.

### a. Subject-Matter Jurisdiction

#### i. Factual Versus Facial Challenge

As an initial matter, the Court construes the Army's jurisdictional challenge as a factual—rather than a facial—attack.  Instead of challenging jurisdiction as alleged on the face of the Complaint, the Army's Motion disputes the truth of Plaintiff's allegation that he properly exhausted his administrative remedies.  See Mot. at 9-10; Compl. ¶ 17.  Moreover, the Army asks the Court to consider evidence to dispute the truth of the Complaint's jurisdictional allegations, and Plaintiff submits evidence in response.

#### ii. Framework for Exhaustion in a Mixed Case

Title VII grants an aggrieved federal employee the right to file suit in federal district court, see 42 U.S.C. § 2000e-16(c), but before doing so the employee must exhaust his administrative remedies against his federal employer.  See Brown v. Gen. Servs. Admin., 425 U.S. 820, 832, 96 S. Ct. 1961, 48 L. Ed. 2d 402 (1976).  In this circuit, exhaustion is considered a "jurisdictional prerequisite."  Sommatino v. United States, 255 F.3d 704, 707 (9th Cir. 2001).  Thus, if a federal employee fails to exhaust his administrative remedies, the district court cannot adjudicate the claim.  See id.

A federal employee has at least two options for exhausting his remedies for a Title VII claim in a mixed case:

18

he may file a "mixed case complaint" with his agency's EEO office or, alternatively, he may file a "mixed case appeal" with the MSPB. See Sloan v. West, 140 F.3d 1255, 1259 (9th Cir. 1998) (quoting 29 C.F.R. § 1614.302(a)); see also Perry v. Merit Sys. Prot. Bd., 137 S. Ct. 1975, 1979-81, 198 L. Ed. 2d 527 (2017).

If an aggrieved federal employee chooses the first option, he would file a mixed-case complaint with his agency's EEO office, "much as an employee challenging a personnel practice not appealable to the MSPB could do." Perry, 137 S. Ct. at 1980, 198 L. Ed. 2d 527 (quoting Kloeckner, 568 U.S. at 44-45, 133 S. Ct. 596, 184 L. Ed. 2d 433); see also 29 C.F.R. § 1614.302(b). If the EEO office decides against him, "the employee may then either take the matter to the MSPB or bypass further administrative review by suing the agency in district court." Perry, 137 S. Ct. at 1980, 198 L. Ed. 2d 527 (quoting Kloeckner, 568 U.S. at 45, 133 S. Ct. 596, 184 L. Ed. 2d 433); see also 5 U.S.C. § 7702(a)(2); 29 C.F.R. §§ 1614.302(d)(1)(ii), (d)(3), 1614.310(a).

If the employee chooses the second option, he would "initiate the process by bringing [his] case directly to the MSPB, forgoing the agency's own system for evaluating discrimination charges." Perry, 137 S. Ct. at 1980-81, 198 L. Ed. 2d 527 (quoting Kloeckner, 568 U.S. at 45, 133 S. Ct. 596,

184 L. Ed. 2d 433).  If the MSPB has jurisdiction over the mixed case and upholds the agency's personnel action, the employee can then request additional administrative process through the Equal Employment Opportunity Commission ("EEOC") or else sue the agency in federal district court.[5/]  See 5 U.S.C. § 7702(a)(3), (b).

Whichever of these options a federal employee elects to pursue, he is required to raise his entire mixed case in the chosen forum.  See 29 C.F.R. § 1614.302(b) (providing that the employee must raise his entire mixed case before either the MSPB or the EEOC, "but not both").  If a plaintiff has filed both an EEO complaint and an MSPB appeal related to the same adverse employment action, "whichever is filed first shall be considered an election to proceed in that forum."  Id.

### iii. Exhaustion

The Army argues that Plaintiff failed to properly exhaust his administrative remedies as to his retaliation/reprisal claim and his race and "gender" discrimination claims.  Mot. at 15.  In the Army's view, the only viable Title VII claim is the one alleging discrimination

---

[5/]  Of course, as discussed above, the MSPB's jurisdiction over discrimination claims is limited to those "mixed cases" where a federal employee alleges that an appealable adverse action was based in whole or in part on discrimination.  See 5 U.S.C. § 7702(a)(1)(B)(i)-(iv); Chappell v. Chao, 388 F.3d 1373, 1375 (11th Cir. 2004) (citing 5 U.S.C. § 7702; 29 C.F.R. § 1614.302; Sloan, 140 F.3d at 1259).  And there are other procedures for non-mixed cases.  See 5 U.S.C. § 7703(b)(1).

based on sexual orientation, as that was the only discrimination claim raised before the MSPB.[6/]  See Mot. at 18-20.  The Opposition is somewhat confusing as to Plaintiff's position.  He seems to argue that he properly brought certain discrimination claims through the EEO process and others separately through the MSPB process.  As discussed below, the Court finds that Plaintiff failed to exhaust his administrative remedies as to his retaliation claim, his race discrimination claim, his sex discrimination claim (to the extent it is distinct from his sexual-orientation claim), and his hostile work environment claim.  That leaves the Court with jurisdiction over only the sexual-orientation discrimination claim based on a theory of disparate treatment.

There does not appear to be any significant dispute between the parties as to the timeline and events surrounding the EEO and MSPB proceedings.  Where they disagree is how the regulations operate in these circumstances.  Simply put, the Court must determine whether all of Plaintiff's discrimination claims should have been raised before the MSPB or whether he is entitled to pursue them independently based on his raising them

---

[6/]  The Court notes that it is not clear whether the Army views the "sex" or what it calls "gender" discrimination claim as distinct from the sexual-orientation discrimination claim.  At the hearing, Plaintiff's counsel confirmed that Plaintiff's references to sex discrimination and sexual-orientation discrimination are really just two sides of the same coin.  Indeed, the Supreme Court's decision in Bostock held that, under Title VII, discrimination based on sexual orientation is discrimination based on sex.

earlier in an EEO complaint.  McAdams v. Reno, 64 F.3d 1137, 1141 (8th Cir. 1995).

Plaintiff's action began as a non-mixed EEO complaint filed on August 15, 2016, focused on allegations of discrimination and a hostile work environment.  After the NOPR was issued, Plaintiff amended his EEO complaint to allege retaliation.  ECF No. 56-7 at ex. 4.  Later, after he was removed, Plaintiff amended his EEO complaint again to include his removal, thereby making it a "mixed case" complaint.  AR 715-16; see also ECF No. 56-7 at ex. 8.  He then attempted to appeal his removal to the MSPB as well, but the ALJ dismissed the appeal as premature because of the pending related EEO complaint.  AR 713-23; Army CSF ¶ 24; Pl. CSF ¶ 24; see also 5 C.F.R. § 1201.154(c).  Plaintiff was advised that he could refile his appeal with the MSPB after 120 days had passed without an EEO decision.  AR 717; see also 5 C.F.R. § 1201.154; 29 C.F.R. 1613.421(g); 5 U.S.C. § 7702(e)(1)(a).

Thus, on December 6, 2017, Plaintiff elected to refile his MSPB appeal.  Doing so "transformed h[is] administrative action from an EEO mixed case complaint into an MSPB mixed case appeal."  McAdams, 64 F.3d at 1142 (citing C.F.R. § 1201.154(b)(2)).  From that point on, everything Plaintiff had raised in his EEO complaint were transferred to the MSPB proceeding.  See id.  "Having chosen that option, []he was

22

required to exhaust h[is] claims in that forum before filing a
civil action." Id.  Instead, Plaintiff chose to abandon his
retaliation and his race and sex (to the extent distinct from
sexual orientation) discrimination claims, including his claims
of a hostile work environment.[7/]  Cf. id.  Because the "statutory
scheme for mixed cases does not confer federal jurisdiction over
such claims," Plaintiff cannot now assert them separately in a
civil action.  Id.

        Plaintiff seems to assume that his EEO action was
never a mixed-case complaint, and that the EEO proceedings
separately confer jurisdiction over the hostile work environment
and reprisal claims that predated his removal.[8/]  This argument
is not persuasive.  First, Plaintiff's various administrative
filings raised related and overlapping issues.  His allegations
regarding a hostile work environment and retaliation are
directly related to his claims of disparate treatment
culminating in his termination.  Indeed, Plaintiff's Opposition

---

[7/]  The Court notes that neither party in its brief addresses the
contours of the hostile work environment claims as compared to or distinct
from the disparate treatment discrimination claim.  However, Plaintiff did
not raise his hostile work environment claims before the MSPB, and the ALJ
adjudicated Plaintiff's sexual-orientation discrimination claim under a
disparate-treatment theory in connection with his removal.  Likewise, it is
clear from Plaintiff's framing of his claims that the hostile work
environment claims involve overlapping and related facts to his disparate-
treatment claims, which the Court discusses further below.  See ECF No. 56-10
at 26:5-28:5.

[8/]  At the hearing, Plaintiff's counsel argued that he never filed a
mixed-case complaint and that he only filed a mixed-case appeal while he had
other claims pending before the EEO office.  At the same time, he admitted
that Plaintiff amended his EEO complaint to include the claims related to his
termination.

describes his "simultaneous EEO complaint over his removal" and notes that his EEO complaint alleged discrimination and reprisal "culminating in Plaintiff being issued a Notice of Proposed Removal." Opp. at 5. Second, both the EEOC and the MSPB treated Plaintiff's EEO administrative filings as a mixed case. The MSPB treated the proceedings as a mixed case when it dismissed Plaintiff's appeal "because it related to issues in the pending EEO complaint." McAdams, 64 F.3d at 1142; see also AR 715-16. And the EEOC treated the proceedings as a mixed case when it partially dismissed a portion of the EEO complaint pursuant to 29 C.F.R. § 1614.302(d). AR 749.

Plaintiff's earlier EEO complaint and amendments raised race and sex discrimination, hostile work environment, and reprisal in connection with the treatment and investigation of Plaintiff. Then, when the NOPR and Notice of Removal were issued, Plaintiff brought the issue of his removal into his EEO proceedings.[9/] See AR 716 (ALJ noting that Plaintiff did not dispute that he timely amended his EEO complaint to challenge his removal, "a matter otherwise appealable to the Board"). For those reasons, the Court finds that the allegations made in Plaintiff's EEO complaint and amendments and then in his MSPB

_____

[9/] The Court notes that issuance of an NOPR is not an adverse action appealable to the MSPB. Stoddard v. Geren, No. CIV.A. C-08-313, 2010 WL 774156, at *10 (S.D. Tex. Mar. 3, 2010). So it was only when Plaintiff amended his EEO complaint to address the Army's removal decision that it became an adverse action appealable to the MSPB.

appeal were related and part of a mixed case.  See 29 C.F.R. §
1614.302(a)(1) (describing a mixed-case complaint before the EEO
involving employment discrimination "related to or stemming from
an action that can be appealed to the [MSPB]"); id. §
1614.302(a)(2) (describing a mixed-case appeal before the MSPB
involving an appealable agency action that was "effected, in
whole or in part, because of discrimination").  When Plaintiff
chose to amend his EEO complaint to challenge his removal, he
elected to proceed in that forum.  Then, when the 120 days
passed and Plaintiff refiled his MSPB appeal, the case became a
mixed-case appeal before that administrative body.  Plaintiff
chose only to raise sexual orientation discrimination (disparate
treatment) before the MSPB, and his "abandonment" of the
reprisal, race discrimination, and hostile work environment
claims before the board "prevent h[im] from raising them here."
McAdams, 64 F.3d at 1143; see also Ward v. U.S. Dep't of
Commerce, No. GJH-15-817, 2016 WL 4099071, at *1 (D. Md. Aug. 2,
2016) (finding that the court lacked jurisdiction over
discrimination claims "because Plaintiff failed to exhaust her
administrative remedies by withdrawing those claims before the
MSPB").

　　　　Plaintiff implies that the Court may have jurisdiction
over his other Title VII claims based on a theory that he can
pursue those claims separately from his mixed case.  See Opp. at

9.  Again, this is "contrary to the statutory scheme."  McAdams, 64 F.3d at 1143 (collecting cases); see also 29 C.F.R. § 1614.302(b); Scalese v. Babbitt, 198 F.3d 255 (9th Cir. Oct. 20, 1999) (unpublished) (explaining that the regulations require a plaintiff to raise his entire case "before either the MSPB or the EEOC, 'but not both'").  Plaintiff is not entitled to pursue separate simultaneous proceedings when the claims are all based on related and overlapping incidents.  See Chappell v. Chao, 388 F.3d 1373, 1379 (11th Cir. 2004) (finding that the plaintiff's "discrimination claims were related to his termination claims, and could have been brought before the MSPB as mixed claims").  Plaintiff does not dispute that the claims he first raised before the EEO regarding a hostile work environment, reprisal, and other forms of discrimination were all what—in Plaintiff's view—led to him being investigated for misconduct, placed on administrative duties, and then ultimately removed.

        To summarize, Plaintiff elected to proceed with his mixed case first through the EEO process when he amended his EEO complaint to include claims surrounding his removal.  After 120 days without a final decision from the EEO office, Plaintiff then had the option to either file a mixed-case appeal with the MSPB or a civil action in district court.  Plaintiff chose the former.  By doing so he transformed the case into a mixed-case appeal and thereby elected to pursue all his claims related to

his removal in that forum.  See 29 C.F.R. § 1614.302(b); see also Checketts v. Merit Sys. Prot. Bd., 50 F. App'x 979, 981 (Fed. Cir. 2002) ("Once the employee elects to file a discrimination complaint directly with the employing agency, . . . the statute grants further jurisdiction to the [MSPB] to hear the complaint only after the employee has exhausted the EEO complaint process."); Hunter v. Vilsack, Civ. No. DKC 07-2655, 2010 WL 1257997, at *9 (D. Md. Mar. 26, 2010) ("When Plaintiff filed her supplemental complaint with the Agency's EEO office . . ., she technically committed to pursue all of her claims as a 'mixed case complaint' before the EEOC.  Even assuming that she properly withdrew her EEO claims and raised them before the MSPB, however, she was clearly required to raise them all in one place.").

It is undisputed that Plaintiff only proceeded with the affirmative defense of sexual orientation discrimination (disparate treatment) before the MSPB.  See Army CSF ¶ 23; Pl. CSF ¶ 23; ECF No. 56-7 at exs. 5, 7, & 8; see also ALJ Decision at 20.  Because he failed to raise any other forms of retaliation or discrimination (including race discrimination, sex or gender discrimination to the extent distinct from sexual orientation, and hostile work environment) before the MSPB, the Court lacks jurisdiction over those claims.

### b. Merits of Claim for Discrimination Based on Sexual Orientation

The Court turns now to the portion of Plaintiff's Title VII discrimination claim over which it has jurisdiction. The claim centers around the allegation that Plaintiff was investigated and ultimately terminated from his position as a police officer at Tripler on account of his sexual orientation.[10]   The Army argues that Plaintiff's Title VII claim fails as a matter of law because the undisputed facts present no triable issue as to whether Plaintiff was investigated and removed because of his sexual orientation.  Mot. at 20-26.

### i. Legal Framework

To prove discrimination under Title VII, a plaintiff must establish that "(1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably." Chuang v. Univ. of Cal. Davis, Bd. of Trs., 225 F.3d 1115, 1123 (9th Cir. 2000).  "The burden of establishing a prima facie case of disparate treatment is not onerous."  Tex. Dep't of Cmty.

_____

[10]   The Army rightly does not challenge the Court's jurisdiction over this portion of the Title VII claim because Plaintiff properly exhausted his administrative remedies by asserting discrimination based on sexual orientation as an affirmative defense in his MSPB appeal.  The Court notes also that both parties submitted CSFs with evidence, including deposition transcripts, to support their respective positions on the merits of Plaintiff's discrimination claim.  Accordingly, the Court analyzes this portion of the Army's Motion under the Rule 56 summary-judgment standard.

Affairs v. Burdine, 450 U.S. 248, 253-54, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981).  By establishing a prima facie case, the plaintiff creates a presumption of discrimination.  Id.  Then, under the burden shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), the burden of production shifts to the defendant to rebut the claim by articulating a legitimate, nondiscriminatory reason for its conduct.  Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1028 (9th Cir. 2006).  If the defendant produces a nondiscriminatory explanation, then the presumption of discrimination is dropped and the plaintiff must satisfy the original burden of persuasion.  Costa v. Desert Palance, Inc., 299 F.3d 898, 855 (9th Cir. 2002); see also Burdine, 450 U.S. at 255, 101 S. Ct. 1089, 67 L. Ed. 2d 207.

     The plaintiff can satisfy the burden of persuasion in two ways.  Cornwell, 439 F.3d at 1028; see also Burdine, 450 U.S. at 256, 101 S. Ct. 1089, 67 L. Ed. 2d 207.  The plaintiff may make the same showing that he could have made originally, in the absence of the McDonnell Douglas burden shifting, by offering direct or circumstantial evidence "that a discriminatory reason more likely motivated the employer" to engage in disparate treatment.  Cornwell, 439 F.3d at 1028.  Or, the plaintiff can offer evidence that the "employer's proffered

29

explanation is unworthy of credence." <u>Burdine</u>, 450 U.S. at 256, 101 S. Ct. 1089, 67 L. Ed. 2d 207.

### ii. Application

The Army asserts that Plaintiff has failed to establish a prima facie case for discrimination based on sexual orientation because Plaintiff has not produced evidence that he was similarly situated to other officers or coworkers treated more favorably.  Mot. at 20.  The Army further contends that even if Plaintiff could make a prima facie case, the Army has offered legitimate, nondiscriminatory reasons for the investigation and removal, and Plaintiff has failed to show that those reasons were pretext for discrimination.  <u>Id.</u> at 23-25.

### 1. Prima Facie Case

The burden of proof to establish a prima facie case under Title VII is minimal.  "[T]he plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment." <u>Chuang</u>, 225 F.3d at 1124.  "This is because the ultimate question is one that can only be resolved through a searching inquiry—one that is most appropriately conducted by a factfinder, upon a full record." <u>Id.</u> (citing <u>Schnidrig v. Columbia Mach., Inc.</u>, 80 F.3d 1406, 1410 (9th Cir. 1996)).

Plaintiff has failed to meet even this minimal burden. He has produced no comparators required to establish the fourth

element.  See Wooden v. Hammond, No. 11-cv-5472-RBL, 2013 WL
1187659, at *5 (W.D. Wash. Mar. 21, 2013) (dismissing race
discrimination claim because plaintiff failed to identify any
comparator data); Abram v. City & Cty. of San Francisco, No.
C07-3006 PJH, 2008 WL 4462104, at *3-4 (N.D. Cal. Oct. 3, 2008)
(granting summary judgment to defendants where plaintiff
provided no evidence identifying comparators).  Nor has he shown
other circumstances that would create an inference of
discrimination such that he would not need to provide comparator
data.[11/]  See Peterson v. Hewlett-Packard Co., 358 F.3d 599, 603
(9th Cir. 2004) (explaining that if a plaintiff cannot show
comparator data, he must instead identify "other circumstances
surrounding the adverse employment action that create an
inference of discrimination").

     Instead of responding to the Army's argument that
Plaintiff cannot offer comparator evidence, Plaintiff only
offers evidence that Officer Oda (the officer who conducted the
investigation) knew Plaintiff was bisexual and that Officer
Oda's comments were derogatory because of Plaintiff's sexual
orientation.  See Opp. at 11-12.  The Court agrees that Officer

---

[11/]  Plaintiff stated at the hearing that he has not alleged or produced
any comparator data because there are no other employees who identify as
bisexual.  This misses the point of comparators; Plaintiff must show that he
was treated differently from coworkers outside of his protected category who
committed similar offenses.  He has not done so, nor has he offered any
"other circumstances" surrounding the removal process that would create an
"inference" of discrimination.  See Peterson, 358 F.3d at 603.

Oda's comments reasonably show some animus on his part based on sexual orientation.[12/]  That said, Officer Oda's occasional use of foul and derogatory language—while unacceptable and offensive—is not enough to establish that the investigation and ultimately termination of Plaintiff was the result of discrimination by the deciding agency officials.  Although Officer Oda was initially assigned to investigate Plaintiff, the investigation was managed by Officer Ballesteros and led to testimony and factual evidence that Plaintiff had engaged in various forms of misconduct while on duty.  From those findings, Plaintiff's supervisors (not Officer Oda) determined that Plaintiff should be removed from his position.

Plaintiff's failure to proffer comparator data or other circumstances that establish an inference of discrimination is fatal to his Title VII claim.  Cf. Adetuyi v. City & Cty. of San Francisco, 63 F. Supp. 3d 1073, 1087 (N.D. Cal. 2014).  His bare-bones Opposition does not even address the elements of a prima facie case.  See Opp. at 11-14.  Basically all the Opposition does is argue that (1) Plaintiff articulated

---

[12/]  The Court acknowledges the Army's argument that Plaintiff's story changed several times as to whether he was actually gay or bisexual and that not until depositions were taken in this case did Plaintiff allege that Officer Oda actually knew of Plaintiff's sexual orientation back in August 2016, well before the investigation and removal.  The Court declines to engage in an analysis defining Plaintiff's actual sexual orientation, given that there are other elements of the prima facie case and burden-shifting analysis that he has plainly failed to prove.  As to when Officer Oda or anyone else actually became aware of Plaintiff's sexual orientation, that would appear to be a factual dispute that the Court discusses further below.

that he was "not Heterosexual" and (2) the recent Bostock decision establishes that discrimination based on sexual orientation is encompassed by Title VII.  Id. at 10.  But those arguments only address one of the four elements of a prima facie case.  And as for the counter-CSF, it focuses on proving simply that Plaintiff was bisexual and that at least Officer Oda may have been aware of the same.  The arguments and evidence submitted by Plaintiff are insufficient to give rise to an inference of discrimination on the part of the agency officials tasked with overseeing the removal decision-making process, even under Plaintiff's minimal burden at the initial stage of the burden-shifting analysis.

### iii. Burden-Shifting Analysis

Even if Plaintiff had been able to come forward with evidence of a prima facie case of discrimination, he has not shown a genuine dispute of material fact regarding whether the Army's non-discriminatory reasons for Plaintiff's removal were pretextual.

Assuming Plaintiff had proved a prima facie case, the burden would shift to the Army to show that the removal action was taken for legitimate, nondiscriminatory reasons.  Hawn v. Exec. Jet Mgmt., Inc., 615 F.3d 1151, 1155 (9th Cir. 2010).  The Army presents several legitimate, nondiscriminatory justifications for the decision to issue the NOPR and then

ultimately to remove Plaintiff from his position at Tripler.
See ECF No. 56-4 at 313:18-314:18.  First, Plaintiff was found
to have engaged in sexual relations at his workplace while he
was supposed to be on duty.  NOPR at 1.  Second, Plaintiff
engaged in "long periods of social interaction and gossiping"
while he was supposed to be on duty.  Id.  Third, Plaintiff
acted unprofessionally when—while he was on duty—he confronted
an employee at the Tripler ED about rumors regarding
inappropriate sexual relationships between various employees.
Id. at 2.  Fourth, other employees indicated that Plaintiff
would "brag about . . . sexual encounters at work."  Id.  And
fifth, Plaintiff called in sick on a day when he ended up
attending a catamaran ride and dinner in Waikiki.[13/]  Id.

        Given those many reasons, the burden would then shift
back to Plaintiff to raise "a triable issue of material fact" as
to whether the Army's proffered reasons for removing Plaintiff
was "mere pretext for unlawful discrimination."  Hawn, 615 F.3d
at 1155.  "A plaintiff can show pretext directly, by showing
that discrimination more likely motivated the employer, or
indirectly, by showing that the employer's explanation is
unworthy of credence."  Vasquez v. Cty. of Los Angeles, 349 F.3d

---

[13/]  The Court notes that this last justification was not upheld
factually by the ALJ.  ALJ Decision at 16-18.  Nonetheless, it was a non-
discriminatory justification upon which the decisionmakers in this case
relied.

634, 641 (9th Cir. 2003).  Direct evidence is usually composed
of "clearly sexist, racist, or similarly discriminatory
statements or actions by the employer."  Coghlan v. Am. Seafoods
Co. LLC, 413 F.3d 1090, 1094-95 (9th Cir. 2005); see also Maybin
v. Hilton Grand Vacations Co., LLC, Civil No. 17-00489 DKW-KSC,
2018 WL 1177914, at *4-5 (D. Haw. Mar. 6, 2018) ("Direct
evidence often takes the form of slurs made by the employer
against members of the protected category." (citing Earl v.
Nielsen Media Rsch., Inc., 658 F.3d 1108, 1113 (9th Cir.
2011))).  "Because direct evidence is so probative, the plaintiff
need offer 'very little direct evidence to raise a genuine issue
of material fact.'"  Coghlan, 413 F.3d at 1095.  In contrast,
circumstantial evidence constitutes "evidence that requires an
additional inferential step to demonstrate discrimination."  Id.
A plaintiff's circumstantial evidence must be both specific and
substantial in order to survive summary judgment.  Becerril v.
Pima Cty. Assessor's Office, 587 F.3d 1162, 1163 (9th Cir.
2009).

        Plaintiff's Opposition never addresses pretext or the
Army's many legitimate reasons.  That said, Plaintiff offers
direct evidence that Officer Oda used slurs directed at
Plaintiff, including calling him a "fag" or "faggot."  Indeed,

it is undisputed that on at least one occasion Officer Oda introduced Plaintiff to a new officer by using those terms.

The Court finds that the statements by Officer Oda in conjunction with circumstantial evidence regarding Officer Oda being assigned to investigate Plaintiff do not raise a genuine issue of material fact as to the Army's discriminatory animus. Whatever issues Officer Oda had, he was not responsible for deciding whether Plaintiff would be removed.[14/]  See Morris v. McHugh, 997 F. Supp. 2d 1144, 1167-68 (D. Haw. 2014) (finding that plaintiff had failed to raise a genuine issue of material fact as to defendant's discriminatory animus where defendant argued that comments in a prior report did not relate to the decisionmaker and decision at issue).  Officer Ballesteros directed and controlled the investigation and issued the NOPR,

---

[14/]  In his Opposition, Plaintiff alludes to a deficient investigation by Officer Oda, noting that "Oda chose not to interview Tristen Aczon notwithstanding her offer to provide exculpatory testimony."  Opp. at 3; see also ECF Nos. 86-1, 86-3, & 91.  He makes this statement in the fact section of his brief but then does not expand on it elsewhere.  Nevertheless, the Court agrees with the Army that Plaintiff has not established any disputed material fact with respect to Officer Oda's failure to interview Ms. Aczon.  See Army Reply at 7-8; see also ECF No. 56-5 at 69:6-71:1; ECF No. 86-3 at 68:20-71:1.  All Plaintiff has shown is that Ms. Aczon was not interviewed.  Whatever testimony Ms. Aczon would have given, Plaintiff does not explain how such information would be relevant to determining whether the decisionmakers honestly believed the reasons they relied upon for deciding to removal Plaintiff.  Plaintiff also criticizes Officer Oda's failure to interview Plaintiff in the course of the investigation.  Opening Br. at 24.  Yet Plaintiff also admits that Officer Ballesteros—who largely controlled the investigation and was in charge of what resulted from it—met with Plaintiff and his union representatives (as was required by the collective bargaining agreement) to discuss the various allegations that had been raised against Plaintiff.  Id. at 5; see also Pl. CSF ¶ 10 (admitting to Army CSF ¶ 10 that "Ballesteros met with Plaintiff and his union representative twice to allow for any rebuttal before proposing any disciplinary action").

36

while DPM Ingebredtsen made the final removal decision.  See ECF No. 56-2 at 49:1-50:1, 53:19-53:25; ECF No. 56-4 at 266:1-16; ECF No. 86-3 at 71:2-9; see also ECF No. 56-9.  It is true that the underlying misconduct came to light during Officer Oda's investigation, but Plaintiff has not established that the decisions related to his removal were motivated by discriminatory animus.  Indeed, Officer Ballesteros largely controlled the investigation.  He provided Officer Oda with specific questions to ask certain witnesses, and Officer Oda eventually sent the interviews to Officer Ballesteros to review and decide how to proceed.  See ECF No. 56-2 at 65:18-66:1; ECF No. 56-5 at 57:9-19, 71:2-11; ECF No. 86-3 at 71:2-71:72:19.  Moreover, DPM Ingebredtsen independently reviewed the investigation and consulted with a subject-matter expert before he ultimately decided to move forward with removing Plaintiff.  Army CSF ¶ 13.  Simply put, it is undisputed that Officer Oda was not involved in the NOPR and ultimate removal decision.

The Army asserts that Plaintiff has not alleged or offered evidence to establish that either of the decisionmakers would have had any idea about Plaintiff's sexual orientation.  See Mot. at 8.  At the hearing, Plaintiff's counsel argued that Plaintiff's report that Officer Oda called him a "fag" alerted Officer Ballesteros of Plaintiff's sexual orientation.  But when Plaintiff internally reported the February 2016 incident with

Officer Oda to Officer Ballesteros, he (Plaintiff) did not claim that he was gay or bisexual or that he took Officer Oda's remarks to be discriminatory based on Plaintiff's sexual orientation.  See ECF No. 56-2 at ex. 1 (stating that plaintiff was "not sure what [Officer Oda's] intentions are" in "calling [Plaintiff] a fag in front of new employees").  And in Plaintiff's EEO complaint—filed in August 2016 (several months before his removal)—he stated that he was "not gay."  ECF No. 56-7 at ex. 2.  The only allegation or testimony that anyone at the Army was made aware of Plaintiff's sexual orientation before the removal process began was with respect to Officer Oda.  See ECF No. 56-4 at 273:2-14; ECF No. 56-11 at 429:19-430:14; ECF No. 86-2 at 429:19-430:14.  And the Court notes that Plaintiff's allegations that he had told Officer Oda he was bisexual came a year after the investigation and removal decision had been completed, and after Plaintiff had made statements to the contrary.  ECF Nos. 56-11 & 86-2.

In any event, whether or not Officer Ballesteros or DPM Ingebredtsen were aware of Plaintiff's sexual orientation is a red herring.  Plaintiff has provided absolutely no evidence of animus on their part, or evidence that they based their removal decisions on pretext.  In fact, Plaintiff's supervisors took the incident with Officer Oda quite seriously.  When Officer Ballesteros found out about the incident with Officer Oda,

Officer Ballesteros acted quickly to address the situation and communicate with both Plaintiff and Officer Oda about it. Officer Ballesteros immediately investigated the allegation, issued a memorandum of counseling to Officer Oda, called a meeting between Officer Oda and Plaintiff, and required Officer Oda to issue an apology.  See ECF No. 56-2 at 27:11-27:23, 30:3-30:4; ECF No. 56-4 at 261:2-17; see also ECF No. 56-7 at ex. 2.

So while Plaintiff's conflicting factual allegations as to who knew what and when may give the appearance of disputed facts, those facts are not material here.  The facts that are material (primarily that the Army relied on multiple legitimate, non-discriminatory reasons for removing Plaintiff) are undisputed.  Regardless of the decisionmaker's knowledge of Plaintiff's sexual orientation at any given time, Plaintiff has not offered any proof that their actions in issuing the NOPR and final removal decision were pretextual.

In any event, the timeline simply does not support Plaintiff's theory of any animus (or even knowledge) on the part of his superiors:  In February 2016 Plaintiff reported the incident with Officer Oda but did not indicate to his superiors that he was gay or bisexual; in April 2016 the misconduct allegations about Plaintiff began to come to light; in August 2016 in his EEO complaint Plaintiff stated unequivocally that he was "not gay"; in November 2016 the NOPR was issued; In February

39

2017 final removal decision was issued; and finally, a year after the removal decision, Plaintiff for the first time claimed that he actually had told Officer Oda he was bisexual back in early 2016 before the investigation began.  Plaintiff attempts to confuse various issues.  Bottom line, regardless of if or when the decisionmakers became aware of Plaintiff's sexual orientation, there is no evidence of animus or circumstances that suggest the Army's reasons for Plaintiff's removal were pretextual.

Plaintiff has not offered the Court any evidence that the Army's explanation as to its reasons for removing Plaintiff was "contrived, much less any evidence that [the Army's decisionmakers] did not honestly believe [the] proffered reason." Medina v. FCH Enterprises, Inc., Civ. No. 12-00364 JMS-KSC, 2013 WL 3157526, at *29-30 (D. Haw. June 19, 2013). Moreover, as offensive as Officer Oda's comments were, in a case based on sex discrimination "[w]hatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted discrimina[tion] . . . because of . . . sex." Hughes v. Mayoral, 721 F. Supp. 2d 947, 959-60 (D. Haw. 2010) (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998)) (internal quotation marks omitted) (alternation in

40

Oncale).  Officer Oda's occasional use of offensive terms when the record is vague at best as to Plaintiff's sexual orientation do not suggest that a discriminatory animus impacted the deciding official's ultimate decision to remove Plaintiff.

In sum, although minimal evidence is sufficient to establish a prima facie case, "when evidence to refute the defendant's legitimate explanation is totally lacking, summary judgment is appropriate." Lindsey v. SLT Los Angeles, LLC, 447 F.3d 1138, 1148 (9th Cir. 2006) (internal quotation marks omitted).  Here, Plaintiff's evidentiary showing is deficient and fails on both counts; it establishes neither a prima facie case, nor pretext.  Thus, summary judgment is GRANTED in the Army's favor as to Plaintiff's Title VII claim for discrimination based on sexual orientation.

## II.  The Appeal of the MSPB Decision

The Court turns now to evaluating the MSPB's decision upholding the Army's removal action.  The Court has evaluated the arguments set forth in the parties' briefs and reviewed the administrative record, including transcripts of the ALJ hearing, the ALJ's final decision, and other relevant testimony and documents.  For the reasons discussed below, the Court holds that the ALJ's findings and the penalty imposed were reasonable, supported by the substantial evidence, not arbitrary or capricious nor an abuse of discretion, and in accord with

relevant law.  The Court thus AFFIRMS the MSPB's decision
sustaining the Army's removal of Plaintiff.

        To prevail on an appeal of an MSPB decision, an agency
must (1) prove by a preponderance of evidence that the charged
conduct occurred, (2) establish a nexus between the charged
conduct and the efficiency of service, and (3) demonstrate that
the penalty imposed was reasonable.  Shaw v. Dep't of Veterans
Affairs, No. 14-cv-5856(NSR), 2017 WL 5508914, at *3 (S.D.N.Y.
Mar. 16, 2017), aff'd, 715 F. App'x 60 (2d Cir. 2018).  The
Court addresses each of these elements in turn.

        **a. Proof of the Charges**

        Plaintiff contends first that the ALJ erred in finding
that the Army proved the charge described in the specifications
by a preponderance of evidence.  See Opening Br. at 9.  An
agency need only prove the essence of its charge and need not
prove each factual specification supporting the charge.  Hicks
v. Dep't of the Treasury, 62 M.S.P.R. 71, 74 (M.S.P.B. 1994),
aff'd, 48 F.3d 1235 (Fed. Cir. 1995) (table).  A specification
or charge may also be sustained even if part of the
specification is not sustained.  See Bowen v. Dep't of the Navy,
112 M.S.P.R. 607, 611-12 n.2 (M.S.P.B. 2009), aff'd, 402 F.
App'x 521 (Fed. Cir. 2010); Diaz v. Dep't of the Army, 56
M.S.P.R. 415, 419-20 (M.S.P.B. 1993).  As discussed below, the
Court holds that the ALJ's determination that the Army met its

42

burden on the single charge was made on the basis of substantial evidence.  See 5 U.S.C. § 7703(c)(3); Shaw, 2017 WL 5508914 at *2.

The Army's removal action against Plaintiff proceeded on a single charge:  "Conduct Unbecoming of a Police Officer." ALJ Decision at 5; NOPR at 1.  "In order to prove the charge of conduct unbecoming, the agency must show that the charged conduct occurred, and that the conduct was improper, unsuitable, or detracted from the appellant's character or reputation." Miles v. Dep't of the Army, 55 M.S.P.R. 633, 637 (M.S.P.B. 1992); see also Otero v. U.S. Postal Serv., 73 M.S.P.R. 198, 201-05 (M.S.P.B. 1997).  Intent is not normally an element of this offense.  King v. Frazier, 77 F.3d 1361, 1363 (Fed. Cir. 1996).  The single charge here was based on five specifications, four of which were ultimately upheld by the ALJ.  See NOPR at 1-2; ALJ Decision.  The Court begins by addressing specification "a" then proceeds to addressing specifications "b" and "d" together, and concludes by addressing specification "c."[15/]

---

[15/]  The Court does not address specification "e," which was not upheld by the MSPB.  ALJ Decision at 18.

### i. Specification "a"

The first specification is based on Plaintiff engaging in on-duty sexual relations with a Tripler ER medical support assistant, Ms. Garcia:

> Specification a: Ms. Anela G. provided a sworn statement indicating that she had a sexual relationship with you over a six month period approximately late 2015 through early 2016). Ms. Anela G. recalled the two of you went to the 10th floor of TAMC three to four times a week to "just talk" [to have sex] while on duty. She described the room as "an empty room, with a workout bench, blue mats, and A/C" and also indicated that you used a set of keys to access the room and brought a bag of wipes from ER with you. Ms. Anela G. knew you were on duty because you were in uniform when the two of you went up to the 10th floor, and you would remove your duty belt and uniform during your sexual encounters. You were not conducting official business on the 10th floor and therefore, you were not authorized to enter and use the room for your sexual encounters. You were not authorized to use the wipes from the ER for your personal business. Nevertheless, your conduct was inappropriate for a Police Officer on duty.

See NOPR at 1 (alterations in original).

The ALJ considered affidavits, testimony, and other evidence, ultimately crediting Ms. Garcia's story over Plaintiff's. ALJ Decision at 17-20. Ms. Garcia testified that she and Plaintiff had engaged in sexual encounters at work, while both were working the night shift. Id. at 6. She testified that these encounters took place in a room on the eleventh floor of the hospital and she described the room in

44

detail.  Id.  Her story was then corroborated by other evidence
and testimony in the record.  See id.

        Now on appeal, Plaintiff denies the allegations of
this charge.  He attempts to portray Officer Oda's investigation
as shoddy, mismanaged, or incomplete.  He also argues that he
has consistently denied any on-duty or on-premises sexual
relationship with Ms. Garcia, and that certain parts of her
story are fabricated or inconsistent.  Opening Br. at 10-12.
All of Plaintiff's arguments on this specification focus on the
ALJ's credibility analysis—mainly by attacking Ms. Garcia's
credibility and trustworthiness—and point out internal
inconsistencies.

        It is not the Court's role to second guess the ALJ's
credibility determinations.  Jones, 834 F.3d at 1368 (quoting
Hambsch, 796 F.2d at 436).  They are "nearly unreviewable,
unless inherently improbable or discredited by undisputed fact."
Figueroa, 423 F. Supp. 3d at 31 (citing White, 382 F. App'x at
933); see also Rogers, 814 F.2d at 1553-54.  Plaintiff has not
pointed the Court to any discrediting undisputed fact, nor has
he shown that the credited testimony was inherently improbable.
The Court acknowledges Plaintiff's argument that Ms. Garcia
changed her story at least twice.  The ALJ addressed that
concern in detail, and ultimately made findings on her
trustworthiness and conducted a detailed review of the record to

45

consider any corroborating or discrediting evidence.

Indeed, the ALJ properly recognized the conflict in testimony and analyzed the factors outlined in Hillen v. Dep't of the Army, 35 M.S.P.R. 453 (M.S.P.B. 1987) to make a credibility determination.[16/]   ALJ Decision at 7-8.  The ALJ emphasized the details provided in Ms. Garcia's testimony and the fact that her descriptions of the location and context were corroborated by other testimony and photographic evidence.  Id. The ALJ found Ms. Garcia to be "sincere and forthright, and her testimony to be unequivocal, detailed, internally consistent, consistent with the record, and not inherently improbable.  Id. at 8.  The ALJ also explained in detail how she viewed the conflicting evidence and Plaintiff's attempts to undermine Ms. Garcia's credibility.  Id. at 11.

The ALJ also addressed Plaintiff's argument that he could not have engaged in sexual relations with Ms. Garcia at the workplace because he required erectile dysfunction medication.  Id.; see also AR 892-93.  The ALJ found that this argument actually undermined Plaintiff's position, because he would have been able to "engage in sexual activity within 1 hour

---

[16/]   These factors include "(1) The witness's opportunity and capacity to observe the event or act in question; (2) the witness's character; (3) any prior inconsistent statement by the witness; (4) a witness's bias, or lack of bias; (5) the contradiction of the witness's version of events by other evidence or its consistency with other evidence; (6) the inherent improbability of the witness's version of events; and (7) the witness's demeanor."  Hillen, 35 M.S.P.R. at 458.

after taking the medication." Id.  The Court finds that the ALJ's analysis and findings on this point are consistent with the substantial evidence.  Plaintiff's attempt to offer an alternative explanation is not enough to warrant reversal or remand where the ALJ's findings are supported by the substantial evidence.

Plaintiff also states (without citing to the record) that Ms. Garcia testified that Officer Brower knew about Plaintiff and Ms. Garcia's relationship and would often "cover" for Plaintiff.  Opening Br. at 18.  Plaintiff argues on appeal that the ALJ erred by disallowing rebuttal testimony on this point from Officer Brower.  Id.  Without more from Plaintiff, the Court finds that the ALJ's treatment of Officer Brower's and Ms. Garcia's testimony was proper and consistent with the ALJ's duty to make credibility determinations based on the various conflicts in the testimony.  The ALJ's treatment of the testimony and credibility findings are supported by the substantial evidence, and Plaintiff has not highlighted any error or shown that the ALJ's findings on this issue were arbitrary, capricious, or contrary to law.

Plaintiff goes on to make alternative factual allegations about the ups and downs of his relationship with Ms. Garcia, and he attempts to pick apart Ms. Garcia's testimony to highlight inferences more favorable to him.  He also alludes to

47

some type of conspiracy masterminded by Officer Oda to retaliate based on Plaintiff's complaint in February 2016 about Officer Oda's use of derogatory language toward Plaintiff.  But the investigation of Plaintiff did not begin until several months later, after reports of a confrontation between Plaintiff and Mr. Sewell, and after Plaintiff had indicated that the conflict with Officer Oda had been resolved.  See ALJ Decision at 10.

Plaintiff's attempts in the Opening Brief to discredit the ALJ's findings and categorize the investigation of his misconduct as pretext for personal animus on the part of Officer Oda are not persuasive.  The Court finds the ALJ's detailed analysis of each witness's testimony, Plaintiff's blanket denials, and the inconsistencies and demeanors on both sides to be thorough and a legitimate application of the Hillen factors for assessing credibility.  See Davis v. U.S. Postal Serv., 257 F. App'x 320, 323 (Fed. Cir. 2007) ("[T]he determination of the credibility of the witnesses is within the discretion of the presiding official who heard their testimony and saw their demeanor." (citation and internal quotation marks omitted)).  Plaintiff asserts what he sees as glaring credibility issues that the ALJ did not factor in, but virtually everything he has raised was indeed addressed by the ALJ, even if she did not necessarily make the inferences Plaintiff would have liked.  The Court finds that the ALJ's findings as to specification "a" are

not arbitrary or capricious, or not in accord with the law.

### ii. **Specifications "b" and "d"**

Specifications "b" and "d" relate to allegations that Plaintiff spent long periods gossiping and conversing near Health Services at Tripler:

> Specification b: Ms. Kianna A.LS., an employee from the VA PIHCS Health Administrative Services, provided a sworn statement indicating that you frequently visited the ACC (VA) for long periods of time to talk. Ms. Kianna A.L.S. recalled that around February 2016, she heard rumors that her significant other (Mr. James S.) was sleeping with Ms. Anela G. She originally dismissed the rumors but on or around 21 March 2016, Ms. Anela G. disclosed that you had spread the rumors about Mr. James S. and Ms. Anela G. On or about 8 April 2016, Ms. Kiana A.L.S. requested to meet with you in an effort to stop you from spreading the rumors but you confronted Mr. James S. at the ED that same day. Nevertheless, you should have been attending to your official duties as a Police Officer instead of engaging in long periods of social interaction and gossiping.

> Specification d: Ms. Vasthi K.T., an employee from the VA PIHCS Health Administrative Services, provided a sworn statement indicating that she would frequently see you in their work area for sometimes hours at a time. On or around 8 February 2016, Ms. Vasthi K.T. recalled that you used to talk about your ''friend" that you were cheating on your wife with, and you also showed her different websites on your cell phone where you went to hook up with girls. Ms. Vasthi K.T. said that you even showed her pictures of some girls that you were hooking up with. Ms. Vasthi K.T., recalled that you specifically mentioned a "friend" here where you hooked up "on the 10th floor of the TAMC hospital in a locked

> room where there are mats and wipes so you can
> clean the mats after [you and your friend] are
> done fucking." You even jokingly offered to
> take Ms. Vasthi K.T. to the room. In late March
> 2016, Ms. Vasthi K.T. recalled that Ms. Anela
> G. disclosed that her "friend" was breaking up
> with her and began to address you by name.
> You were not conducting official business at
> the VA and had no reason to be there for long
> periods of time or to brag about your sexual
> encounters at work. This was inappropriate and
> unprofessional conduct for a Police Officer on
> duty.

See NOPR at 1-2.

The ALJ framed the "gravamen" of these specifications to be that Plaintiff "spent significant amounts of time while on duty engaging in personal conversations" with VA employees in the VA's ACC, and that "on at least several occasions [Plaintiff] engaged in banter of a sexual nature." ALJ Decision at 13. On appeal, Plaintiff does not raise specific challenges to the ALJ's findings on these specifications. Instead, he challenges the ALJ's credibility findings and generally denies the truth of the factual allegations and evidence.

With respect to these two specifications, the ALJ considered the testimony of various employees and witnesses, and credited their testimony over Plaintiff's. ALJ Decision at 14. The ALJ did not find any support in the record for Plaintiff's self-serving "blanket denials." ALJ Decision at 14. She found instead that the evidence in the record showed that Plaintiff spent long periods of time conversing with VA staff while he was

50

supposed to be on duty, and that the "subject matter of his interactions were often personal and at times, sexual in nature." Id. at 14-15.  The Court finds that the ALJ's finding that the Army proved specifications "b" and "d" by a preponderance of the evidence is not arbitrary or capricious and is supported by the substantial evidence.

### iii. Specification "c"

Specification "c" involves allegations that Plaintiff confronted a coworker, Mr. Sewell, in the Tripler ER about a personal matter:

> Specification c: Mr. James S., a Medical Support Assistant in the Emergency Department (ED), provided a sworn statement indicating that on 8 April 2016, you were on official business at the ED when you approached him at the Red Pit (Charge Nurse area) and said, "Hey, James. What's up with this bitch? Your girl, Anela. She is putting me in some mix saying that I was jealous of you and her. And I told that bitch that I have someone and I don't wanna talk to her but she keeps fuckin' with me and I had her on my team before but she won't leave me alone." You displayed unprofessional behavior towards Mr. James S. while you were performing official duties as a Police Officer.

See NOPR at 2.  According to this specification, Plaintiff confronted Mr. Sewell in the ER about a personal conflict while he was on duty.

Like with many of the specifications and as is often the case in allegations of misconduct, there are multiple

stories as to what actually happened in the confrontation between Plaintiff and Mr. Sewell.  Mr. Sewell provided testimony and statements giving his point of view, while Plaintiff responded with blanket denials.  See ALJ Decision at 15-16.  The ALJ ultimately credited Mr. Sewell's testimony over Plaintiff's. ALJ Decision at 16.  The ALJ noted that Mr. Sewell's testimony was substantiated by testimony from other witnesses, while Plaintiff's blanket denials were again inconsistent with the record.  Id.  The ALJ thoroughly discussed her impression of the testimony and evidence, and explained why she found Plaintiff's testimony not credible.  Id. at 16-17.

Again, it is not the Court's role to second guess the ALJ's credibility determinations unless they are inherently improbable or discredited.  And the ALJ here properly recognized the conflict in testimony and analyzed the factors outlined in Hillen to make a credibility determination.  See ALJ Decision at 17-18 n.12.  A reasonable person could accept the evidence in the record and cited by the ALJ as adequate to support the conclusion that the Army proved this specification.

In sum, Plaintiff has not presented the Court with any "evidence so weighty that it 'compels' the Court to disturb the AJ's finding" as to the Army proving the single charge of conduct unbecoming based on the four proven specifications. Figueroa, 423 F. Supp. 3d at 31 (quoting Immigr. &

Naturalization Serv. v. Elias-Zacarias, 502 U.S. 478, 481 n.1, 112 S. Ct. 812, 117 L. Ed. 2d 38 (1992)).  The Court finds that the ALJ sustained the charge of conduct unbecoming on the basis of substantial evidence, and the ruling was not otherwise arbitrary, capricious, or contrary to law.

### b. Nexus

Although Plaintiff does not appear to explicitly challenge the nexus aspect of the ALJ Decision, the Court addresses it briefly.  To establish nexus, an agency must show by a preponderance of evidence that the employee's conduct is "related to his job-related responsibilities" such that "removal promotes the efficiency of service." Banks v. Dep't of Veterans Affairs, 25 F. App'x 897, 899-900 (Fed. Cir. 2001); see also Dominguez v. Dep't of the Air Force, 803 F.2d 680, 682-83 (Fed. Cir. 1986).  To satisfy the nexus requirement, the agency must establish that the employee's misconduct would have an "adverse impact on the agency's performance of its functions." Shaw, 2017 WL 5508914 at *5 (citing Banks, 25 F. App'x at 899-900). Here, the ALJ observed that an agency may establish nexus by showing that the employee's conduct (1) affected his coworkers' job performance, (2) affected management's trust and confidence in the employee's job performance, or (3) interfered with or adversely affected the agency's mission.  ALJ Decision at 25 (citing Canada v. Dep't of Homeland Sec., 113 M.S.P.R. 509, 514-

15 (M.S.P.B. 2010)).

In this case, the ALJ considered that the "misconduct occurred at work and affected management's trust and confidence in [Plaintiff]'s job performance."  ALJ Decision at 25 (citing Campbell v. Dep't of the Army, 123 M.S.P.R. 674, 685 (M.S.P.B. 2016), which recognized a presumption of nexus where the misconduct occurred at work).  The ALJ's finding that the specifications established nexus was not, in the Court's view, arbitrary, capricious, or unsupported by the substantial evidence.

Plaintiff's conduct reasonably would have affected management's trust and confidence in Plaintiff's job performance, especially where he was engaging in non-work-related behavior while he was supposed to be on duty and often carrying a weapon.  Substantial evidence supports the conclusion that Plaintiff's conduct would have a serious adverse impact on the ability of Plaintiff's managers or supervisors to trust or remain confident in his ability to carry out his role.  Applying the deferential standard of review as required here and noting that Plaintiff has not made any arguments on appeal to challenge nexus, the Court finds that the ALJ's ruling establishing a nexus between the charged conduct and efficiency of service was based on substantial evidence and was not arbitrary, capricious, or contrary to law.

### c. Reasonableness of the Penalty Imposed

After sustaining the charges and finding a nexus between the charged conduct and efficiency of service, the ALJ found the penalty of removal to be appropriate.  ALJ Decision at 26.  Plaintiff argues that the ALJ erred because removal in these circumstances was too harsh and because the ALJ and deciding official misapplied the relevant considerations.  Opening Br. at 8.

"The choice of penalty is committed to the sound discretion of the employing agency and will not be overturned unless the agency's choice of penalty is wholly unwarranted in light of all the relevant factors."  Guise v. Dep't of Justice, 330 F.3d 1376, 1382 (Fed. Cir. 2003) (citing Lachance v. Devall, 178 F.3d 1246, 1251 (Fed. Cir. 1999)); see also Shaw, 2017 WL 5508914 at *6 ("It has been long held that 'the court cannot and will not disturb a penalty unless it is unauthorized or exceeds the bounds of reasonableness because it is so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion.'" (quoting Dominguez, 803 F.2d at 684)); Krauthamer v. Block, 587 F. Supp. 254, 257 (S.D.N.Y. 1984) (explaining that a reviewing court "will defer to the judgment of the agency as to the appropriate penalty for employee misconduct, unless its severity appears totally unwarranted" (quoting Brewer, 647 F.2d at 1098)).  The MSPB has

set forth twelve factors that are relevant to assessing whether a punishment is reasonable. Douglas v. Veterans Admin., 5 M.S.P.R. 280 (M.S.P.B. 1981).[17/]  Reviewing courts are "highly deferential" to the Agency in terms of the chosen penalty and may not rebalance the Douglas factors. See Webster v. Dep't of the Army, 911 F.2d 679, 685 (Fed. Cir. 1990). Moreover, "[w]hether the court would have selected a different penalty had it made the initial determination is irrelevant." Dominguez, 803 F.2d at 684.

The ALJ here concluded that the deciding official properly considered the relevant factors and exercised discretion within the tolerable limits of reasonableness in fixing the penalty. ALJ Decision at 31. Although he was not

---

[17/]  The factors include "(1) The nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated; (2) the employee's job level and type of employment, including supervisory or fiduciary role, contacts with the public, and prominence of the position; (3) the employee's past disciplinary record; (4) the employee's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability; (5) the effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in the employee's ability to perform assigned duties; (6) consistency of the penalty with those imposed upon other employees for the same or similar offenses; (7) consistency of the penalty with any applicable agency table of penalties; (8) the notoriety of the offense or its impact upon the reputation of the agency; (9) the clarity with which the employee was on notice of any rules that where violated in committing the offense, or had been warned about the conduct in question; (10) potential for the employee's rehabilitation; (11) mitigating circumstances surrounding the offense such as unusual job tensions, personality problems, mental impairment, harassment, or bad faith, malice or provocation on the part of others involved in the matter; and (12) the adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others." Douglas, 5 M.S.P.R. at 305-306.

required to conduct an independent evaluation of the Douglas
factors, see Figueroa, 423 F. Supp. 3d at 35, the ALJ provided a
thorough analysis of the relevant factors and how each supports
the Agency's conclusion that removal was appropriate, see ALJ
Decision at 26-31.

Specifically, the ALJ agreed with the deciding
official that the misconduct proven here—particularly
specification "a" for consensual sex with a coworker on premises
and on duty—was "egregious and extremely serious, especially in
light of Plaintiff's position as a law enforcement officer and
the fact that his actions were intentional and were repeated
over a long period of time." ALJ Decision at 26-27. The ALJ
also noted the agency's consideration of the table of penalties,
which suggested a one-day suspension up to removal for a first-
time offense related to conduct unbecoming.[18] Id. at 27. The
ALJ emphasized the serious nature of the underlying factual
specifications here and the repeated nature of the conduct. Id.
The ALJ also discussed the deciding official's view of the lack

_____

[18]   The Court notes that that the table of penalties says, "one-day
suspension to removal" for a first offense, suggesting that a more serious
offense may trigger removal, especially where (as here) the offense is
repeated and continuous. AR 1242 (emphasis added). Moreover, the ALJ here
considered mitigating factors, including the lack of prior offenses. What is
more, Plaintiff faced multiple specifications and offenses at the same time,
which all supported the broader charge of conduct unbecoming. See NOPR at 1-
2. The table of penalties even says that "when an employee is being charged
with multiple offenses at the same time," and "when an employee has
repeatedly committed the same offense, even though the employee is being
charged with the offense for the first time," "it may be appropriate to
exceed the maximum suggested penalty for all of the individual offenses."

of rehabilitative potential.  Id. at 30.  The ALJ found,
consistent with the substantial evidence, that Plaintiff
repeatedly failed to properly secure his service weapon while
engaging in sexual activity on duty (specification a), that he
gossiped and engaged in personal conversations while on duty
(specifications b and d), and that he confronted Mr. Sewell
about a personal matter while on duty (specification c).  Id. at
26-30.  In turn, the ALJ noted that Plaintiff has blanketly
denied all the allegations against him despite supporting
evidence, which demonstrated a lack of accountability and
remorse.  Id. at 30.

        Finally, the ALJ discussed the Agency's consideration
of mitigating factors, including Plaintiff's "length of service,
good service record, and lack of prior discipline."  ALJ
Decision at 31.  While attributing some weight to these
mitigating factors, the ALJ agreed with the deciding official's
view that these factors "were insufficient to outweigh the
seriousness of the charges."  Id.

        Plaintiff has not pointed the Court to any reversible
error in the ALJ's analysis or to any evidence that would make
the ALJ's findings inconsistent with the substantial evidence.
Instead, the ALJ cited and analyzed the relevant testimony and
mitigating factors.  The ALJ properly "credited the evidence
that the agency considered the pertinent factors bearing on the

appropriate penalty." <u>Guise</u>, 330 F.3d at 1382.  Plaintiff has offered no compelling reason to overturn the ALJ's determination, "particularly in light of [the Court's] limited scope of review on this issue." <u>Brewer v. Dep't of Def.</u>, 249 F. App'x 174, 177 (Fed. Cir. 2007) (affirming ALJ's decision sustaining removal where deciding official considered employee's "past disciplinary history, of which there was none," "the seriousness of [the employee's] misconduct," and "the nature of [the employee's] employment in a leadership position"); <u>see also</u> <u>Guise</u>, 330 F.3d at 1382 (finding "no basis for overturning the administrative judge's determination, particularly in light of the very limited scope of our reviewing authority on the penalty issue").

Plaintiff also argues that the Army failed to exercise the principle of "progressive discipline."[19/]  Opening Br. at 28. He argues that the penalty of removal "exceeded the tolerable bounds of reasonableness given Plaintiff's record of satisfactory service, lack of prior discipline, his potential for rehabilitation, and the Merit Systems Principles that discipline should <u>not be punitive</u>." <u>Id.</u>  As discussed above,

---

[19/]  It is not clear whether Plaintiff is raising this in connection with his affirmative defense of harmful procedural error, or whether he is simply attacking the ALJ's and the Army's application of the Douglas factors for determining whether the penalty was reasonable.  <u>See</u> Opening Br. at 28. Given the substance of Plaintiff's arguments on this point, it appears to be the latter.  The Court thus treats it as further challenging the application of the <u>Douglas</u> factors.

both the deciding official and the ALJ properly considered those factors, and found removal to be appropriate based thereon. Throughout this Order the Court has outlined ample evidence relied upon by the Army that ultimately led it to determine that removal was appropriate in these circumstances, especially where the misconduct was serious and repetitive.

Even if the Court might have weighed some of the Douglas factors slightly differently, "the penalty imposed by the AJ was consistent with the factors enunciated in Douglas, reasonable, and certainly not 'wholly unwarranted,' as it must be in order to be overturned." Shaw, 2017 WL 5508914 at *6 (quoting Murray v. U.S. Dep't of Justice, 821 F. Supp. 94, 110 (E.D.N.Y. 1993)).  The Court finds that the penalty imposed is within the tolerable bounds of reasonableness, consistent with the substantial evidence, and not arbitrary, capricious, or contrary to law.

### d. Other Affirmative Defenses[20/]

One of Plaintiff's arguments in his Opening Brief is that the Army terminated his employment for discriminatory (hostile work environment and disparate treatment) and retaliatory reasons.  Opening Br. at 38-42.  This argument goes to Plaintiff's discrimination-based claims and is thus not subject to the arbitrary-and-capricious standard.  The Court addressed these claims above in its earlier de novo review.

### CONCLUSION

For the reasons discussed above, the Court GRANTS Defendant's Motion to Dismiss or in the Alternative for Summary Judgment, ECF No. 55, on Plaintiff's Title VII discrimination claims and AFFIRMS the Agency decision of the MSPB regarding Plaintiff's removal from federal employment.  Specifically, the Title VII claims based on retaliation/reprisal, race- and

---

[20/]  The Court only addresses the discrimination defense because Plaintiff does not expressly challenge the ALJ's finding of no harmful procedural error.  As noted in footnote 19, Plaintiff's argument as to progressive discipline (which was used for the harmful procedural error defense before the ALJ) focuses on the requirement of a reasonable penalty pursuant to the Douglas factors.  That said, Plaintiff's argument might be considered to raise certain procedural errors, including (1) Officer Oda being selected to handle the investigation of Plaintiff, (2) Plaintiff not being questioned by Officer Oda, (3) Ms. Aczon not being questioned by Officer Oda, (4) the Army's failure to exercise the principle of progressive discipline, and (5) the ALJ disallowing Officer Brower's purported testimony rebutting Ms. Garcia's testimony that he served as a "cover" for Plaintiff.  Even assuming Plaintiff might be asserting some harmful procedural error (which he fails to expand on in any meaningful way in his brief on appeal), the Court has already discussed each of these issues above and finds that the ALJ's conclusion that there was no harmful procedural error is supported by the substantial evidence.

gender- or sex-based (to the extent this is different from sexual orientation) discrimination, and hostile work environment are dismissed with prejudice for lack of subject matter jurisdiction.  Summary Judgment is entered in favor of the Army on Plaintiff's Title VII claim for discrimination (disparate treatment) based on sexual orientation.

IT IS SO ORDERED.

DATED: Honolulu, Hawai`i, March 2, 2021.

_____
Alan C. Kay
Sr. United States District Judge

Crowe v. Whitley, Civ. No. 18-00288 ACK-RT, Order Granting the Army's Motion to Dismiss (ECF No. 55) and Affirming the Agency's Decision Upheld by the Merit Systems Protection Board.